OWENS et al. v. DAY et al.

No. 34665. Oct. 28, 1952.

*249 P. 2d 710.*

342

Neal A. Sullivan, Newkirk, for plaintiffs in error.

W. W. Rodgers and John H. Gurley, Blackwell, for defendants in error.

BINGAMAN, J. This action was brought by plaintiffs, Arminta Day, Elba F. Day, Floyd E. Day and Cleal S. Day against the defendants, O. O. Owens and John C. Kunkel, Jr., to quiet the title of plaintiffs in a certain 160-acre tract of land in Kay county, against the claims of the defendants to the ownership of certain mineral interests in the land and interests in the royalty in the oil and gas produced therefrom. In their answer defendants alleged that each of them was the owner of an undivided one-eighth royalty interest in and to the premises and that defendants desired to have full advantage of their rights, including their right to test and explore for oil and gas. The case was tried to the court without a jury and at the conclusion of the testimony the trial court rendered judgment for plaintiffs. Defendants appeal.

The essential facts are undisputed. On July 8, 1924, Fred and Arminta Day the then owners of the property, executed a royalty conveyance to L. P. Caldwell whereby they conveyed to Caldwell an undivided one-thirty-second interest in and to the oil, gas and other minerals in and under the land, granting them the right of ingress and egress for the purpose of mining and exploring for oil and gas, but reserving to the grantors all bonuses and rentals paid under the existing lease or future leases on the property. This deed ran for a term of ten years from date and as long thereafter as oil or gas was found on the premises. Thereafter, on October 25, 1924, Caldwell conveyed to O.O. Owens all the interest he received under the aforementioned mineral deed or royalty conveyance, reciting that the grant ran for a term of twelve years from August, 1924, and as long thereafter as oil or gas or either was produced from the premises. Thereafter Owens made a royalty conveyance to the defendant Kunkel, conveying one-half of the interest he received from Caldwell, for a term of ten years from the date of the original conveyance and as long thereafter as oil or gas was produced from the premises.

On July 29, 1936, Fred and Arminta Day entered into an agreement with Owens and Kunkel reciting that Owens and Kunkel each owned an undivided one-sixty-fourth of the mineral rights in and under the land and an undivided one-eighth of the royalty, and that in consideration of the defendants joining Fred and Arminta Day in an oil and gas lease to Phillips Petroleum Company, dated July 16, 1936, covering 120 acres of the land in controversy, they extended and continued in full force and effect the interest of defendants to July 29, 1946, and as long thereafter as oil or gas was found on the premises.

It further appears that this lease was released by Phillips Petroleum Company in 1941, but that on the remaining 40, which was under a separate lease, there was production; that this produc-

tion ceased in the latter part of 1947, and the well on said 40-acre tract was pulled and plugged. Thereafter, in 1948, the lessee of the 40-acre tract released his lease and thereupon the present plaintiffs, who had succeeded to the ownership of the land, wrote to defendants asking for a release of their rights under their deeds and the extension agreement for the reason that production on the land had ceased. Upon the refusal of the defendants to release the royalty or mineral conveyances this action was brought.

The sole contention made by defendants is that they as owners of a mineral interest had the right upon and after termination of production to explore the land for oil and gas, and that their mineral interest did not expire upon the cessation of production, but that they thereafter had a reasonable time to determine whether they would themselves do further exploration work upon the premises. The defendant Owens testified that he desired to have a period of six months in which he could have subsurface maps made and if necessary conduct seismograph operations and obtain leases upon the land if, in his judgment, further drilling was warranted. He admitted that he had forgotten all about the interest until he received the letter written by plaintiffs' attorney requesting the release of the interest, and that his interest in the minerals was so small that he made this effort to contact the owners of the land and submit to them the proposition that he be given a reasonable time to ascertain whether or not further exploration could be carried on.

The only cases cited in the brief of defendants bearing on this question are cases involving oil and gas leases, and all these are from other jurisdictions. The cases cited are Maria Blair v. Northwestern Ohio Natural Gas Co., 12 Ohio C. C. p. 78; United States v. Brown, 15 Fed. 2d 565, and Lamb v. Vansyckle, 205 Ky. 597, 266 S. W. 253, in which the courts held that a lessee who had actually drilled upon the lands and produced oil should be given a reasonable time to renew the search after the cessation of production. Defendants also cite McKenna v. Nichlos, 193 Okla. 526, 145 P. 2d 957, but examination of that case discloses that the question there involved was one of forfeiture of the undrilled portion of an oil and gas lease for failure to further develop, and we held that the defendants should be given 60 days within which to commence the drilling of additional wells upon the undeveloped portion of the tract, and that upon their failure to do so the lease should be canceled as to such undeveloped portion.

The instant case does not involve a forfeiture, nor does it involve an oil and gas lease, and we have been unable to find any case in which the contention made by defendants has been passed upon. It further appears that our rule as to oil and gas leases is not in harmony with that followed in the cases cited by defendants. See Western States Oil & Land Co. v. Helms, 143 Okla. 206, 288 P. 964, 72 A. L. R. 357, cited with approval in Woodruff v. Brady, 181 Okla. 105, 72 P. 2d 709, and Walden v. Potts, 194 Okla. 453, 152 P. 2d 923. In these cases we held that where an oil and gas lease was for a specific term and as long thereafter as oil or gas was produced the lease expired upon the termination of production unless the failure to produce, as stated in Woodruff v. Brady, supra, was due to a bona fide attempt to increase production in the existing well.

A case in some respects similar to the instant case is Cridland v. Franklin, 191 Okla. 650, 132 P. 2d 323. That case involved a mineral deed which provided:

"If production is secured within six-months on the above land or within 1½ miles of same an additional consideration of $2300.00 will be due and shall be used to pay delinquencies and taxes now against said land, any balance left to be paid grantors, otherwise, this grant shall become null and void."

344

No oil was produced within the six months period, and the defendants contended that the above-quoted clause merely meant that if production was had within six months an additional consideration would be due plaintiffs, but that if no production was had no consideration would be due and the deed would then be free of any conditions and a valid and subsisting grant. We said that the question was one of the intention of the parties, especially of the grantors, and that since the deed was sufficiently clear in the conditions under which it would become inoperative and those conditions took place, the plaintiffs were entitled to cancellation, as the defendants were bound by the conditions plainly contained in the deed.

We have held in many cases that in such an instrument the intention of the grantor must, if possible, be ascertained from the entire instrument. Trumbla v. State, 191 Okla. 119, 126 P. 2d 1015, Porter v. Warner-Caldwell Oil Co., 183 Okla. 1, 80 P. 2d 252, and Gardner v. Jones, 198 Okla. 691, 181 P. 2d 838.

In the instant case the instruments of conveyance are plain and unambiguous, and by their specific terms the estate of defendants terminated upon the cessation of production. While the deed from the landowners to Caldwell, above referred to, used the term "as long thereafter as oil or gas is found on the premises" it is apparent that all the parties understood that the word "found" was used in the sense of "produced" since both in the conveyance from Caldwell to Owens and the conveyance from Owens to Kunkel it is stated that the grant shall continue in force as long as oil or gas or either of them is produced from the premises. This language is clear, plain and unmistakable and upon the cessation of production and the withdrawal of the lessees from the land the interest of defendants terminated. The court may not read into the conveyance stipulations which were not placed therein by the grantors, since it is evident that the intention of the grantors was that when, after the expiration of the primary term of the grant, the land ceased to produce, the right of the grantees terminated.

Affirmed.

HALLEY, V. C. J., and CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur.